STATE v. ALFRED WINSLOW.

*Indictment before Justice of the Peace—Wilful Trespass on Land.*

1. A warrant will not be quashed because it does not contain the necessary descriptive words of the alleged offence, when it refers to an "annexed affidavit" in which all the essential averments are made.

2. One who, after being forbidden, enters upon land of another under a *bona fide* claim of right, is not guilty of the offence of wilful trespass. *The Code,* §1120.

3. One who enters upon the land of another, after being forbidden, as the servant, and at the command of a *bona fide* claimant, is not guilty of any criminal offence.

(*State* v. *Jones,* 88 N. C., 671; *State* v. *Crosset,* 81 N. C., 579; *State* v. *Bryson,* Ibid., 595; *State* v. *Hanks,* 66 N. C., 612; and *State* v. *Ellen,* 68 N. C., 281, cited and approved).

This was a CRIMINAL ACTION, tried before *Gudger, Judge,* at Spring Term, 1886, of the Superior Court of PERQUIMANS county.

The facts are fully stated in the opinion.

*Attorney-General,* for the State.
*Mr. E. F. Aydlett,* for the defendant.

ASHE, J. This was a criminal action begun before a Justice of the Peace in the county of Perquimans, and after conviction in that Court, carried by appeal of the defendant to

the Superior Court of that county, where it was tried before
GUDGER, Judge, and the defendant again convicted, and from
the judgment then rendered, he appealed to this Court.

In this Court the defendant's counsel took exception to
the warrant, because it did not state that the defendant en-
tered upon the land of the prosecutor wilfully and unlaw-
fully, after being forbidden to do so, and did not state that it
was done without the license of the owner of the land. The
warrant did not make these averments, but the affidavit
upon which it was founded does state all the necessary facts
to bring the case within the Act of 1866, ch. 60 *The Code*,
§1120. The warrant states, that "for the causes in the an-
nexed affidavit, we command you to apprehend," &c., and the
warrant is held in such cases before a justice to be the com-
plaint or indictment, and all the facts necessary to consti-
tute the offence, must be set forth therein, *State* v. *Jones*, 88
N. C., 671. Yet when the warrant expressly refers, as in this
case, to the affidavit, it makes its statements a part of the
"indictment," as much so as if they had been stated in the
warrant.

The defendant is indicted under §1120 of *The Code*, which
reads, "If any person, after being forbidden to do so, shall
go or enter upon the lands of another without a license there-
for, he shall be guilty of a misdemeanor, and on conviction
shall be fined not exceeding fifty dollars, or imprisonment
not more than thirty days." This is the act of 1866, omit-
ting the larceny provision in that act, but in other respects
is identical in its provisions with that act.

The defendant justified the act of removing the fence of the
prosecutrix, Mrs. Ivey, under an order given him by one
Godfrey, in whose employment he was at the time, and who
claimed the land upon which the fence removed was situated.
It was competent for him to make this defence, *State* v. *Cros-
set*, 81 N. C., 579.

The facts proved and admitted were as follows: Godfrey and the prosecutrix owned the adjacent tracts of land. There had been a lane along or near the boundary of the two tracts, which had been used by the public for thirty years or more. That some ten years before the commencement of this prosecution, Mrs. Ivey, the prosecutrix, fenced her land, which before had been turned out, and joined to Godfrey's fence, a portion of which had been standing for more than fifty years, and that to which she joined her fence had been standing for ten or twelve years. That afterwards she gave him notice, and tore her fence from his and left it so for two or three years, and then joined her fence to his again and erected a gate on the lane. In October, 1885, Godfrey gave her notice to tear her fence away from his, which she did not do. Mrs. Ivey had had her land surveyed before the trespass, and the line claimed by her took a portion of his fence and ran a small distance into his field. Godfrey also had his land surveyed by his deeds and plats, and it took the whole of the lane outside his fence for the one third of the way, and one half of the remainder, while the fence of Mrs. Ivey where it joined Godfrey's was on his land.

The defendant was hired as a laborer by Godfrey, and on the 15th of February, 1886, after being forbidden by Mrs. Ivey, tore away her fence where it joined Godfrey's, by his command.

The defendant asked his Honor to charge the jury, that if the defendant, acting as the servant of Godfrey, tore away the fence from Godfrey's, after the notice, and if Godfrey had a *bona fide* claim to the land which would have justified him in tearing the fence away, then the defendant could justify under Godfrey, and is not guilty.

His Honor refused to give this instruction to the jury, and charged them, "that if the defendant went upon the land and tore away the fence after being forbidden, he was guilty."

We think the instruction asked, and refused by the Court, is in accord with the decisions of this Court giving a construction to the Act of 1866, and it was error in the Court below to refuse the instruction.

In the case of State v. Hanks, 66 N. C., 612; the defendant Hanks having made an entry and obtained a warrant of survey, went with the surveyor and others to survey the entry, and in doing so passed through a small piece of enclosed ground, which had been cleared and cultivated by the son of the prosecutor, after being forbidden to do so. This Court held that the object of the Act of 1866 was to keep off interlopers, and to subject them to indictment if they invaded the possession after being forbidden. And as the defendants no doubt honestly believed that the warrant of survey gave them a license to enter the land of the prosecutor, they were liable to a civil action for the trespass, but not to an indictment. And in the case of State v. Ellen, 68 N. C., 281; where the defendants entered upon the land of the prosecutrix, under a contract of purchase from one Waugh, after being forbidden to do so, this Court held, as the defendants set up a bona fide claim of title to the land, the case was not within the meaning of the act, though it may be within its words. In this case the Court cited with approval, and as supporting its construction, the case of State v. Dodson, 6 Caldwell's (Tenn.) Rep., under a statute of that State similar to our Act of 1866, in which the Court says: "We will not presume that the Legislature intended to punish criminally acts committed in ignorance, by accident, or under claim of right, and in the bona fide belief that the land is the property of the trespasser, unless the terms of the statute forbid any other construction." This construction of our Act of 1866 (The Code, §1120,) is fully sustained by the more recent case of State v. Crosset, supra, where it is held, "one who enters upon the land of another under a bona fide claim of right,

is guilty of no criminal offence; therefore where an employé of a railroad company was ordered to fell trees upon land adjacent to its track, which had been conveyed by the owner for right of way, &c., held, not to be indictable for a wilful trespass."

In our case, Godfrey, before committing the trespass, had taken the precaution to have the land surveyed by his deeds and plats, and the jury should have been instructed, that if from this survey he had reason to believe, and did *bona fide* believe, that the land was his, the defendant, as his servant, would not be guilty of a criminal violation of the statute, for tearing away the fence under his command. *State* v. *Bryson*, 81 N. C., 595.

There is error. Let this be certified to the Superior Court of Perquimans that a *venire de novo* may be awarded.

Error.　　　　　　　　　　　　　　　　　　　Reversed.